# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| DEBORAH MATKE, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br>v.<br><br>GC SERVICES LIMITED PARTNERSHIP,<br><br>    Defendant. | Case No.: 20-cv-899<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Deborah Matke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the debt arose from consumer transaction that included agreements to defer payment, namely a consumer credit card.

6. Defendant GC Services Limited Partnership ("GCS") is a foreign limited partnership with its principal offices located at 6330 Gulfton, Houston, Texas 77081.

7. GCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. GCS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. GCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *June 16, 2019 Letter*

10. On or about June 16, 2019, GCS mailed a debt collection letter to Plaintiff regarding an alleged debt, owed to: "Citibank, N.A." ("Citibank") and associated with Plaintiff's "SEARS GOLD MASTERCARD" credit card account ending in 7528. A copy of this letter is attached to this Complaint as Exhibit A.

11. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, including purchases of household goods at Sears stores.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

13. Upon information and belief, Exhibit A is a form debt collection letter used by GCS to attempt to collect alleged debts.

14. Upon information and belief, Exhibit A was the first written communication GCS mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

2

15. The reverse side of Exhibit A includes the following representation which largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> CONSUMER INFORMATION:
> Unless you, within thirty (30) days after your receipt of this letter, dispute the validity of the debt, or any portion thereof, we will assume the debt to be valid. If you notify us in writing within the above described thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you. Additionally, upon your written request within the above described thirty (30) day period, we will provide you with the name and address of the original creditor, if it is different than the current creditor.
>
> The request for you to pay the balance owed in this letter does not reduce your rights to dispute this debt, or any portion thereof, and/or to request verification within the thirty (30) day period as set forth above.

16. The header in Exhibit A contains the following:

> June 16, 2019
>
> File Number: ▇▇▇8674
> Client Account Number: **ENDING 7528**
> New Balance: **$1,023.23**
> Minimum Payment Due: **$625.23**

17. The body in Exhibit A contains the following:

> We are writing to let you know that your account with Citibank, N.A., with a new balance of $1,023.23, has been referred to us.
>
> This letter shows your minimum payment amount currently due. If you are making a payment, please send us your payment using the enclosed envelope, and, if paying by check, make your check payable to "Citibank, N.A.".
>
> We are here to work with you to find a mutually agreeable solution. We invite you to contact us so that we can discuss your particular financial circumstances, as well as opportunities our client may have available for you. Please contact us at 866-749-7274 to discuss payment options that may be available to you on your account.
>
> We look forward to helping you resolve your account. Thank you.

18. Exhibit A is facially unclear as to the amount GCS is attempting collect.

19. Exhibit A states that "your *account* . . . with a new balance of $1,023.23, has been referred to us," (emphasis added), suggesting that GCS is attempting to collect $1,023.23.

20. Exhibit A also states that "We look forward to helping you resolve your *account*." (emphasis added), also suggesting GCS is attempting to collect $1,023.23.

3

21. Further, the reverse side of Exhibit A states that "The request for you to pay the *balance owed* in this letter does not reduce your rights to dispute this debt, or any portion thereof, and/or to request verification within the thirty (30) day period as set forth above."

22. However, Exhibit A also states that it "shows your minimum payment amount currently due," $625.23.

23. The unsophisticated consumer would be confused as to whether GCS was attempting to collect the entire balance allegedly owed on the account, $1,023.23, or just the minimum payment that was allegedly due, $625.23. *See, e.g., Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time.").

### *June 18, 2019 Letter*

24. On or about June 18, 2019, GCS mailed another debt collection letter to Plaintiff regarding the same alleged debt. A copy of this letter is attached to this Complaint as Exhibit B.

25. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

26. Upon information and belief, Exhibit B is a form debt collection letter used by GCS to attempt to collect alleged debts.

27. Exhibit B, mailed on or about June 18, 2018, was mailed and received just a few days after Exhibit A, and during the 30-day statutory validation period that began when Plaintiff first received Exhibit A, which was mailed on or about June 16, 2019.

4

28. Exhibit B contains the following:

```
June 18, 2019                                    File Number: ▊8674
                                        Client Account Number: ENDING 7528
                                                   New Balance: $1,023.23
```

29. Exhibit B offers to settle the account for a single payment in the amount of $767.42.

30. Exhibit B makes no reference to any minimum payment.

31. Exhibit B makes no reference to Plaintiff's statutory dispute rights.

32. The unsophisticated consumer receiving Exhibits A & B would be confused and misled about whether he could still make a minimum payment on the account to return it to a current status.

33. Exhibit B represents to the unsophisticated consumer that the balance of the account had been accelerated.

34. The unsophisticated consumer receiving Exhibits A & B would be confused and misled about whether he could still attempt to dispute the debt. *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

35. The overshadowing effect is compounded by the general confusion caused by the uncertainty surrounding whether the Plaintiff could still make a minimum payment at the time Exhibit B was mailed.

36. Upon information and belief, at the time Exhibit B was mailed, Plaintiff could still return his account to a current status by making a minimum payment.

5

37. Exhibit B represents to the unsophisticated consumer that the account has been accelerated, and fails to state that Plaintiff could make a minimum payment. Upon information and belief, the representations that the account has been accelerated and Plaintiff cannot return the account to a current status by minimum payment are false.

38. Exhibit B represents to the unsophisticated consumer that GCS was collecting a debt in the amount of $1,023.23.

*July 12, 2019 Letter*

39. On or about July 12, 2019, GCS mailed another debt collection letter to Plaintiff regarding an alleged debt, owed to Citibank. A copy of this letter is attached to this Complaint as Exhibit C.

40. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

41. Upon information and belief, Exhibit C is a form debt collection letter used by GCS to attempt to collect alleged debts.

42. Exhibit C, mailed on or about July 12, 2019, was mailed, received, and reviewed during the thirty-day validation period that began to run when Plaintiff received Exhibit A.

43. Exhibit C contains the following:

```
July 12, 2019

                                        File Number:     3674
                                        Client Account Number: ENDING 7014
                                                  New Balance: $1,023.23
                                              Minimum Payment Due: $625.23
```

Exhibit C.

44. Unlike Exhibits A & B, which were purportedly mailed in connection with a "SEARS GOLD MASTERCARD" account ending in 7528, Exhibit C was purportedly mailed in connection with a "SHOP YOUR WAY MASTERCARD" credit card account ending in 7014.

6

45. However, the "New Balance" information stated in Exhibit C is consistent with the "New Balance" information stated in Exhibits A & B and the "Minimum Payment Due" information stated in Exhibit C is consistent with the "Minimum Payment Due" stated in Exhibit A.

46. The unsophisticated consumer would be confused as to whether Exhibit C was attempting to collect the same account as Exhibits A & B, and would be further confused as to whether the account balance and minimum payment due information in Exhibit C was accurate.

47. Further, Exhibit C also contains the following:

> We understand that you may not be able to pay the minimum payment due in one payment. We are willing to work with you to find a mutually agreeable repayment plan that will both take your particular financial circumstances into account and satisfy our client. We urge you to contact us at 866-749-7274 to discuss your repayment plan options. Or, if you'd like, you can answer the questions on the reverse side of this letter and return the top portion to us and we'll evaluate your request. We look forward to helping you resolve your account.

48. Exhibit C represents to the unsophisticated consumer that the account has not been accelerated.

49. Exhibit C represents that GCS is attempting to collect the "minimum payment due" rather than the entire account balance.

50. Exhibits A-C are contradictory and misleading to the unsophisticated consumer.

51. Exhibits A & C both represent to the unsophisticated consumer that Plaintiff can return the account to a current status by making a minimum payment due.

52. Exhibit B, however, represents to the unsophisticated consumer that the balance of the account has been accelerated because it attempts to settle the account by demanding a settlement payment equal to 75 percent of the "New Balance" or total balance of the credit card account and does not reference any minimum payment. The purported settlement amount is more than $140.00 greater than the "Minimum Payment Due" presented in Exhibit A

53. The representations in Exhibits A-C are inconsistent with one another, and are confusing and misleading.

54. Plaintiff was confused and misled by Exhibits A-C.

55. The unsophisticated consumer would be confused by Exhibits A-C.

56. Plaintiff had to spend time and money investigating Exhibits A-C, and the consequences of any potential responses to Exhibits A-C.

## *The FDCPA*

57. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected

8

similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

58. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

59. Misrepresentations of substantive information about the debt collector or the debt, including the timing of deadlines for settlement offers, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading

10

communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

60. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

61. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

62. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

63. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

64. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

65. 15 U.S.C. § 1692g states:

(a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of

11

> a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) Disputed debts
>
> . . .
>
> Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

66. The Seventh Circuit has held that a debt collector must clearly state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

67. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

68. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." *See also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004)

69. The Seventh Circuit has also held that a debt collector must disclose the consumer's rights to dispute the debt clearly and may not include confusing language that obscures the consumer's statutory rights by distracting her attention away from the validation notice. *Muha*, 558 F.3d at 629-30.

### *The WCA*

70. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

71. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

72. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

73. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also

competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

74. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

75. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

76. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

77. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

78. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

14

Case 2:20-cv-00899-BHL     Filed 06/15/20     Page 14 of 20     Document 1

79. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

80. The failure to effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

81. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

## COUNT I -- FDCPA

82. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

83. By simultaneously demanding that Plaintiff pay the "balance owed" and the "minimum payment," Exhibit A includes representations which are false, deceptive, and misleading as to the amount, character, and legal status of Plaintiff's alleged debt.

84. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), 1692g(a)(1).

## COUNT II – WCA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. By simultaneously demanding that Plaintiff pay the "balance owed" and the "minimum payment," <u>Exhibit A</u> may reasonably be expected to threaten or harass Plaintiff and claims the full balance of Plaintiff's alleged debt is owed with reason to know such right does not exist.

87. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT III – FDCPA

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. <u>Exhibit B</u>, mailed during the thirty-day validation period that began to run when the consumer received <u>Exhibit A</u>, represents to the unsophisticated consumer that the balance of the account has been accelerated and attempts to resolve the account through a lump sum settlement.

90. <u>Exhibit B</u> is confusing and misleading to the unsophisticated consumer, who would be confused and misled about whether the acceleration of the debt would affect his dispute rights.

91. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), 1692g(a)(1), and 1692g(b).

## COUNT IV – WCA

92. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

93. By falsely representing that the entire balance of Plaintiff's alleged debt had been accelerated, Exhibit B may reasonably be expected to threaten or harass Plaintiff and claims the full balance of Plaintiff's alleged debt is owed with reason to know such right does not exist.

94. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT V – FDCPA

95. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96. Exhibit C, also mailed during the thirty-day validation period that began to run when the consumer received Exhibit A, states an account number and character of account that is inconsistent with the account number and character of account stated in Exhibits A & B.

97. Exhibit C also represents to the unsophisticated consumer that he can return the account to a current status by making the minimum payment.

98. Exhibit C is confusing and misleading to the unsophisticated consumer, who would be confused about the amount and character of the debt.

99. By alternating between attempts to collect the minimum payment due and the total balance of the account, Exhibits A-C are misleading and confusing as to the actual amount of the debt GCS sought to collect from Plaintiff as well as the possible consequences of a failure to make payments on those amounts.

100. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1), 1692g(a)(1), and 1692g(b).

## COUNT VI -- WCA

101. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

102. By alternating between attempts to collect the minimum payment due and the total balance of the account and otherwise including inconsistent information, Exhibits A-C may reasonably be expected to threaten or harass Plaintiff.

103. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

104. Plaintiff brings this action on behalf of two classes.

105. Class I ("Nationwide Class") consists of (a) all natural persons in the United States of America, (b) who were sent a series of collection letters in the form represented by Exhibits A-C to the complaint in this action, (c) where the consumer did not make a payment after receiving the letter in the form of Exhibit B that would have returned the account to a current status prior to receiving the letter in the form of Exhibit C, (d) for an alleged debt incurred for personal, family, or household purposes, (e) where the letter in the form of Exhibit C was mailed between June 15, 2019 and June 15, 2020, inclusive, (f) and none of the letters was not by the postal service.

106. Class II ("Wisconsin Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a series of collection letters in the form represented by Exhibits A-C to the complaint in this action, (c) where the consumer did not make a payment after receiving the letter in the form of Exhibit B that would have returned the account to a current status prior to receiving the letter in the form of Exhibit C, (d) for an alleged debt incurred for personal, family, or household purposes, (e) where the letter in the form of Exhibit C was mailed between June 15, 2019 and June 15, 2020, inclusive, (f) and none of the letters was not by the postal service.

107. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

108. There are questions of law and fact common to the members of each of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibits A-C</u> violate the FDCPA and the WCA.

109. Plaintiff's claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

110. Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

111. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

112. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: June 15, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

20